MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2024 ME 18
Docket:         And-23-28
Submitted
  On Briefs:    September 27, 2023
Decided:        March 7, 2024

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

## RONALD WHITE et al.

v.

## REAL DEAL AUTO SALES & SERVICE CENTER, LLC

STANFILL, C.J.

[¶1]  After Ronald and Karen White encountered problems with a used car they had just bought from Real Deal Auto Sales & Service Center, LLC, they asked Real Deal to either replace the car's catalytic converters or allow them to return the car for a refund.  Real Deal refused, and the Whites had the repairs done elsewhere.  The Whites then sued Real Deal in a small claims action.  After trial, the District Court ordered Real Deal to pay the Whites $6,000 to reimburse them for the repairs, plus costs.  Real Deal appealed to the Superior Court, and the Superior Court reversed.  We agree with the Whites that the Superior Court erred in doing so, and we therefore remand for reinstatement of the small

---

* Although Justice Jabar participated in this appeal, he retired before this opinion was certified.

2

claims judgment in favor of the Whites.

## I. BACKGROUND

[¶2] Viewed in the light most favorable to the Whites, the prevailing party in the small claims action, the evidence presented to the District Court supports the following facts.[1] *See Yarcheski v. P&K Sand & Gravel, Inc.*, 2015 ME 71, ¶ 5, 117 A.3d 1047; *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798; M.R.S.C.P. 11(d)(1)-(3); M.R. Civ. P. 76F(a). In March 2021, the Whites signed a contract agreeing to purchase a 2011 Volvo vehicle from Real Deal for $8,995. Real Deal is in Auburn. The parties' contract stated that the vehicle was being sold "as is," with "a warranty of inspectability" but without any other warranties. A "used vehicle buyer's guide" provided to the Whites stated that

---

[1] The Superior Court's order vacating the small claims judgment contains several paragraphs of factual assertions beginning with the statement "The following facts could be drawn from the record before the District Court." It is therefore unclear whether the Superior Court viewed the evidence presented to the District Court in the light most favorable to the Whites, as was required where the Superior Court was acting in an appellate capacity and examining questions of law only. *See* M.R.S.C.P. 11(d)(1)-(2) (providing that an appeal by a small claims defendant must be on questions of law only when the defendant has not requested a jury trial de novo); *Taylor v. Walker*, 2017 ME 218, ¶ 6, 173 A.3d 539 ("[T]he Superior Court may not decide facts in a small claim appeal when acting in a purely appellate capacity . . . ."); *Portfolio Recovery Assocs., LLC v. Bickford*, 2017 ME 140, ¶ 9, 166 A.3d 986 ("Legal issues do *not* include questions of weight to be given to evidence."); *Cote v. Vallee*, 2019 ME 156, ¶ 10, 218 A.3d 1148 (explaining that "[t]here is no option for a second bench trial" for a defendant appealing to the Superior Court from a small claims judgment); *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798 (indicating that an appellate court views the evidence in the light most favorable to the prevailing party when reviewing whether the evidence was sufficient to support the judgment on appeal).

there were no known "mechanical defects." The vehicle had a current state inspection sticker on it.

[¶3] The vehicle's check-engine light came on as the Whites were driving the vehicle home from Real Deal. The next morning, the Whites brought the vehicle back to Real Deal. A diagnostic code reader indicated a problem with the catalytic converters. A Real Deal employee told the Whites that he did not think there was a problem with the catalytic converters and that he believed the problem might be related to the spark plugs. He reset the check-engine light and told the Whites that if the light came on again, they should come back, and he would replace the spark plugs.

[¶4] The check-engine light came on again shortly after the Whites left Real Deal that day. The Whites were concerned that Real Deal was minimizing the significance of the issue, so they sought a second opinion. They took the vehicle to three mechanics, all of whom told them that using the vehicle without fixing the catalytic converters could damage the engine. One of these mechanics also told them that the catalytic converters, "flex pipes," and exhaust manifolds needed to be replaced, at a cost of about $8,000; that the pipes were rusted and "probably leaking"; and that the vehicle had been tampered with—"spacers" or "cheaters" had been installed to prevent sensors from activating.

4

[¶5]  The Whites asked Real Deal to either replace the catalytic converters or allow them to return the vehicle for a full refund.  Real Deal refused.

[¶6]  The Whites filed complaints with the Bureau of Motor Vehicles, the Maine State Police, and the Office of the Maine Attorney General.[2]  They then paid a mechanic $6,078.43 to replace several of the vehicle's exhaust components, including two catalytic converters.  The mechanic stated a "professional conclusion [that] the [catalytic] converters ha[d] been bad for a[ ]while and should have been replaced before [the vehicle] was purchased or [an] inspection [was] performed."

[¶7]  The Whites filed a small claims action against Real Deal in the District Court (Lewiston).  After holding an evidentiary hearing, the court (*S. Driscoll, J.*) entered a judgment in favor of the Whites in the amount of $6,000, plus $70 in costs.  *See* M.R.S.C.P. 6, 8.  The court did not include any specific factual findings in its judgment, and neither party requested findings.  *See* M.R. Civ. P. 52(a); *cf.* M.R. Civ. P. 52(b); M.R.S.C.P. 15.  Real Deal timely

---

[2]  Maine State Police inspectors noticed the "spacers," which appeared "to have been in place for an extended time," and noted that the catalytic-converter issue could damage the engine.  They did not remove the inspection sticker from the vehicle, however, because the sale took place in Androscoggin County and they believed that ensuring the functionality of a vehicle's catalytic converters was required only for inspections performed in Cumberland County.

appealed to the Superior Court (Androscoggin County), requesting review of legal issues only and waiving its right to a jury trial de novo on questions of fact. *See* M.R.S.C.P. 11(d)(2); *Ring v. Leighton*, 2019 ME 8, ¶ 14, 200 A.3d 259. After the parties filed briefs, the Superior Court (*Stewart, J.*) issued an order vacating the District Court's judgment and remanding the matter for entry of a judgment in favor of Real Deal. The Superior Court concluded that the evidence presented to the District Court could not, as a matter of law, support the judgment in the Whites' favor. The Whites timely appealed to us.

## II.  DISCUSSION

[¶8]  Where, as here, a defendant appeals from a small claims judgment without requesting a jury trial de novo, only legal issues are reviewable by the Superior Court and by us. *See* M.R.S.C.P. 11(d)(1)-(3); *Portfolio Recovery Assocs., LLC v. Bickford*, 2017 ME 140, ¶ 9, 166 A.3d 986; *see also supra* n.1. We review questions of law de novo. *Bickford*, 2017 ME 140, ¶ 9, 166 A.3d 986. "Legal issues do not include questions of weight to be given to evidence," but Real Deal's argument that the Whites did not, as a matter of law, present evidence on which the District Court could have determined that Real Deal was liable is "cognizable on appeal." *Id.* (emphasis omitted). Our task, therefore, is to determine de novo whether the record evidence was sufficient, as a matter

6

of law, to support the result the District Court reached. *See id.*; *Withers*, 1998 ME 164, ¶ 7, 714 A.2d 798; *Yarcheski*, 2015 ME 71, ¶ 5, 117 A.3d 1047 (noting that we "review the District Court's judgment directly" when the Superior Court has acted in its appellate capacity); *see also supra* n.1.  We conclude that it was.

[¶9]  In Maine, "[a] dealer warrants that the motor vehicle the dealer sells . . . has been inspected in accordance with" 29-A M.R.S. § 1751 (2023) "and with the rules promulgated under that section."  10 M.R.S. § 1474(1) (2023).  This means that a dealer must either warrant that the vehicle meets the state's inspection standards at the time of sale or provide a detailed disclosure regarding what repair is needed.  *Id.* § 1474(1), (4).  This warranty of inspectability, and any remedies for its breach, "may not be excluded, limited, modified or waived by words or conduct of either the dealer or any other person." *Id.* § 1474(2).

[¶10]  According to the statutory state inspection standards, the "equipment subject to inspection" for any vehicle required to be registered in Maine includes catalytic converters on 1983 and newer model vehicles. 29-A M.R.S. § 1751(2)(N). To meet the required standards, a catalytic converter subject to inspection must, among other requirements, "meet the rules

promulgated by the Chief of the State Police." 29-A M.R.S. § 1756(2) (2023).

The rules promulgated by the Chief of the State Police include ten "rejection

standards," including that an inspection sticker must not be issued "if there are

any loose or leaking joints or seams in the exhaust system" or "if the exhaust

system has been inadequately repaired."[3] 16-222 C.M.R. ch. 1, § 170.1(6)(B)(1),

(4) (effective Jan. 31, 2022).

[¶11]  Here, the Whites presented evidence to the District Court that a

mechanic who inspected the vehicle shortly after the sale "checked PCV box and

found slight leakage out of the vent (not causing issue)," and "found flex pipes

rusted and probably leaking" and needing replacement.  The District Court also

heard evidence that the mechanic told the Whites that pieces of the catalytic

converters could break off and travel to the inside of the engine, ruining the

engine.  If believed, this evidence could have supported an inference by the

District Court that there were loose or leaking joints in the exhaust system at

---

[3] Title 29-A M.R.S. § 1751(2-A) (2023) also provides that a vehicle "required to be registered in Cumberland County . . . must have an annual enhanced inspection," which requires a test of the vehicle's on-board diagnostic system, 16-222 C.M.R. ch. 1, § 175(3), (4) (effective Jan. 31, 2022). Before the District Court and the Superior Court, the Whites argued that these enhanced inspection requirements applied to Real Deal and the vehicle in question in this case, because although Real Deal is located in Androscoggin County, Real Deal was aware that the Whites would be registering the vehicle in Cumberland County, where they lived.  We need not address the legal issue of whether the enhanced inspection requirements apply to inspections conducted outside of Cumberland County because, as we discuss below, the evidence before the District Court was sufficient to support a determination that Real Deal breached the warranty of inspectability even if only the standard inspection requirements applied.

the time of sale. *See* 16-222 C.M.R. ch. 1, § 170.1(6)(B)(1); 29-A M.R.S. § 1756(2). In addition, based on that evidence and the evidence, including photos, regarding the spacers, the District Court could have inferred that the exhaust system had been inadequately repaired. *See* 16-222 C.M.R. ch. 1, § 170.1(6)(B)(4); 29-A M.R.S. § 1756(2). Because the Whites presented evidence that the catalytic converters should have been replaced for the vehicle to pass inspection, the District Court could have found that the vehicle did not meet the inspection standards in Androscoggin County, where the vehicle was sold.

[¶12] Although the record might also have supported a determination that the vehicle *did* meet the state inspection standards at the time of sale if the District Court had placed significant weight on other evidence, neither we nor the Superior Court are entitled to weigh the credibility or persuasiveness of various pieces of evidence. *See Bickford*, 2017 ME 140, ¶ 9, 166 A.3d 986. As the Whites point out, the specific factual basis for the District Court's judgment is unknown because findings were not required or requested after the summary proceeding, and Real Deal did not request a jury trial de novo when it appealed to the Superior Court. *See id.* ¶ 12 ("The purpose of small claims proceedings is to provide 'a simple, speedy and informal court procedure for

the resolution of small claims.'" (quoting 14 M.R.S. § 7481 (2023))); M.R.S.C.P. 11(d)(2). We cannot say as a matter of law that the evidence presented to the District Court could not support a determination that Real Deal breached the warranty of inspectability. *See* 10 M.R.S. § 1474(1)(A); *see also* 10 M.R.S. § 1477(1) (2023) (providing that any violation of the warranty of inspectability "shall constitute a violation of" the Unfair Trade Practices Act). Therefore, we vacate the judgment and remand the matter to the Superior Court to enter a judgment affirming the District Court's small claims judgment in favor of the Whites.[4] *See* M.R.S.C.P. 11(f).

The entry is:

> Judgment vacated. Remanded for the entry of a judgment affirming the judgment of the District Court.

---

[4] We decline the Whites' request that we direct the trial court to increase the amount of the small claims judgment. *See* 14 M.R.S. §§ 7481, 7482 (2023) (setting the jurisdictional monetary limit for small claims actions at $6,000, exclusive of interest and costs); *see also Ahlgren v. Fabian*, 1999 ME 6, ¶ 1, 722 A.2d 868. Costs associated with the appeal to us, however, may be allowed, *see* M.R. App. P. 13(c), and "a person who is awarded a money judgment in a small claims action is entitled to post-judgment interest," 14 M.R.S. § 7487 (2023), which "accrues from and after the date of entry of judgment and includes the period of any appeal," 14 M.R.S. § 1602-C(2) (2023).

10

Ronald White, appellant pro se

Karen White, appellant pro se

Mitchel J. Roberge, Esq., Peters & Roberge, P.A., Lewiston, for appellee Real Deal Auto Sales & Service Center, LLC

Androscoggin County Superior Court docket number AP-2022-8
FOR CLERK REFERENCE ONLY